UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-CV-62187-DIMITROULEAS/AUGUSTIN-BIRCH

JASON EINZIG,

   Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

   Defendant.
_____/

**REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT**

The Honorable William P. Dimitrouleas, United States District Judge, referred this case to the undersigned United States Magistrate Judge for appropriate disposition or report and recommendation. DE 5. The case now comes before the Court on Plaintiff Jason Einzig's Motion for Summary Judgment and on Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's Motion for Summary Judgment. DE 21; DE 22. The Motions for Summary Judgment are fully briefed. The Court has carefully considered the briefing and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Court recommends that Einzig's Motion for Summary Judgment [DE 21] be **GRANTED** and that this matter be **REMANDED** for proceedings consistent with this Report and Recommendation. The Court recommends that the Commissioner's Motion for Summary Judgment [DE 22] be **DENIED**.

**I. PROCEDURAL BACKGROUND**

Einzig filed an application for disability insurance benefits on December 2, 2020, and filed an application for supplemental security income on December 4, 2020. He contended in the applications that his disability began on June 17, 2020, when he was involved in a motor vehicle

accident. An Administrative Law Judge ("ALJ") held a telephone hearing on the applications on March 28, 2022, and issued a written decision on April 5, 2022. DE 11 at 21-34, 43-74. The Court discusses the ALJ's decision in detail in the next section below.

Einzig thereafter sought review from the Social Security Administration's Appeals Council, and the Appeals Council denied the request for review on October 20, 2022. *Id.* at 6-9. Although Einzig had submitted additional evidence not before the ALJ for the Appeals Council's consideration, the Appeals Council "did not exhibit this evidence," stating that the evidence did "not show a reasonable probability that it would change the outcome of the decision." *Id.* at 7. This appeal follows.

## II.  THE ALJ'S DISABILITY ANALYSIS

The Social Security Act authorizes the Social Security Administration to pay disability insurance benefits or supplemental security income to an individual who has a disability. *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003). The Act defines "disability," in part, as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

An ALJ follows a five-step sequential analysis to determine whether a claimant has a disability. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the analysis ends and the ALJ does not proceed to the next step.

*Id.* § 404.1520(a)(4). On the other hand, if the ALJ cannot determine that the claimant is disabled or not disabled at a step, the ALJ proceeds to the next step. *Id.* The claimant bears the burden of proving disability and is responsible for producing evidence to support disability. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).

As the first step of the analysis, the ALJ considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). A claimant who is working "doing substantial gainful activity" will be found to not be disabled, regardless of the claimant's medical condition, age, education, and work experience. *Id.* § 404.1520(a)(4)(i), (b). Work activity is substantial when it "involves doing significant physical or mental activities" and is gainful when it "is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 404.1572(a), (b). The ALJ determined that Einzig had not engaged in substantial gainful activity since June 17, 2020. DE 11 at 24.

As the second step of the analysis, the ALJ considers the medical severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant who does not have a severe medically determinable physical or mental impairment or combination of impairments that meets a durational requirement will be found to not be disabled, regardless of the claimant's age, education, and work experience. *Id.* § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1520(c). Unless the impairment is expected to result in death, the durational requirement is that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 404.1509. The ALJ concluded that Einzig had the following severe impairments since June 17, 2020: degenerative disc disease and arthropathy of cervical spine, degenerative disc disease and arthropathy of lumbar spine, psoriasis with psoriatic arthritis, obesity, and bipolar disorder. DE 11 at 24. The ALJ concluded that, beginning on February 1, 2022, Einzig had the additional severe impairment of peripheral neuropathy. *Id.*

3

As the third step of the analysis, the ALJ determines whether the claimant's impairment meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing impairments). The Listing of Impairments "describes for each of the major body systems impairments that [are considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who has such an impairment that meets the above-referenced durational requirement will be found to be disabled. *Id.* § 404.1520(a)(4)(iii), (d). The ALJ determined that Einzig did not have an impairment or combination of impairments that met or equaled an impairment in the Listing of Impairments. DE 11 at 24-26.

As the fourth step of the analysis, the ALJ assesses the claimant's residual functional capacity and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity is the most that the claimant can still do despite his or her limitations and is assessed by considering the claimant's ability to meet the physical, mental, sensory, and other requirements of work. *Id.* § 404.1545(a)(1), (4). Residual functional capacity is determined based on all of the relevant medical and other evidence in the record. *Id.* § 404.1545(a)(1), (3). Past relevant work is the work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). A claimant who still can do his or her past relevant work will be found to not be disabled. *Id.* § 404.1520(a)(4)(iv), (f).

The ALJ determined that before February 1, 2022, Einzig had the residual functional capacity to perform light work. DE 11 at 26. The ALJ explained:

> [Einzig] is capable of lifting, carrying, pushing, and pulling no more than 20 pounds occasionally and 10 pounds frequently, standing and/or walking no more than six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but cannot climb ladders, ropes, or scaffolds. He can sustain attention and

> concentration for simple routine repetitive tasks for two-hour periods in an eight-hour workday with minimal supervision and without extended breaks.

*Id.* The ALJ stated that Einzig "did not appear to really seek treatment for pain" until November 11, 2021, he had "little or no treatment records showing impact of degenerative disc disease prior to" February 1, 2022, and there was "nothing in [the] medical evidence of record to support limitations more than those" listed above. *Id.* at 27-28. The ALJ determined that objective medical findings did not support Einzig's own claims "about the intensity, persistence, and limiting effects of his symptoms." *Id.* at 28-29.

On the other hand, the ALJ concluded that beginning on February 1, 2022, Einzig had the residual functional capacity to perform sedentary work. *Id.* at 30. The ALJ explained:

> [Einzig] is capable of lifting, carrying, pushing, and pulling no more than 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking no more than two hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. He must use a cane when standing and walking but would be able to carry small objects in the opposite hand. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but cannot climb ladders, ropes, or scaffolds, work at unprotected heights, and cannot work with/or near hazardous machinery. Due to pain, he would be off-task 15% or more of the workday.

*Id.* The ALJ stated that Einzig had medical appointments due to pain in February and March of 2022 and "was advised to use a cane for walking." *Id.* at 31. The ALJ further stated that Einzig previously worked in customer service, including as an assistant manager and a cashier. *Id.* at 32. The ALJ concluded that Einzig was unable to perform his past relevant work. *Id.*

As the fifth and final step of the analysis, the ALJ considers the claimant's residual functional capacity, age, education, and work experience to assess whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work will be found to not be disabled, whereas a claimant who cannot adjust to other work will be found to be disabled. *Id.* § 404.1520(a)(4)(v), (g)(1). The ALJ concluded that, considering Einzig's residual functional capacity together with his age, education, and work experience, "there

5

were jobs that existed in significant numbers in the national economy that [he] could have performed" before February 1, 2022.  DE 11 at 32-33.  Thus, the ALJ ruled that Einzig was not disabled before February 1.  *Id.* at 33-34.  The ALJ concluded that, considering Einzig's residual functional capacity together with his age, education, and work experience, "there are no jobs that exist in significant numbers in the national economy that [he] can perform" as of February 1, 2022. *Id.* at 33.  The ALJ therefore ruled the Einzig was disabled beginning on February 1.  *Id.* at 34.

### III.  STANDARDS OF REVIEW

A court reviews an ALJ's decision in a disability case to determine whether "it is supported by substantial evidence and based on proper legal standards."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted).  Substantial evidence "is more than a scintilla, but less than a preponderance" and "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (quotation marks omitted).  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Id.*

A claimant generally is allowed to present new evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council must receive additional evidence that was not before the ALJ if the evidence is "material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  Evidence is material when it is relevant and probative such that there is a reasonable possibility that it would change the result.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001).  The Appeals Council is not required to give a detailed explanation for its decision not to consider additional evidence.  *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).  A court reviews *de novo* the Appeals Council's refusal to consider

new evidence. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). "When the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021) (alteration and quotation marks omitted).

## IV.  ANALYSIS

Einzig appeals on two issues.  First, he asserts that the ALJ's conclusion that he was not disabled before February 1, 2022, is unreasonable, unsupported by substantial evidence, and contrary to the law.  Second, he contends that the Appeals Council erred by finding that there was not a reasonable probability that the additional evidence he submitted would change the outcome of the ALJ's decision.  Because the Court concludes that Einzig's second argument is meritorious in part and warrants remand, the Court addresses that argument first.

Einzig submitted three pieces of additional evidence not before the ALJ for the Appeals Council's consideration.  The Court discusses each piece of evidence in turn.

### A.  Physical Medical Source Statement from Bruce Mann, MD

Einzig submitted to the Appeals Council a Physical Medical Source Statement from Bruce Mann, MD dated October 3, 2019 (the "Mann Statement").  DE 11 at 75-78.  According to the Mann Statement, Einzig had been seeing Dr. Mann monthly for one year for chronic cervical and lumbar disorders manifesting in symptoms of moderate to severe pain in the neck and back radiating into the arms, numbness in the arms and legs, and hand weakness. *Id.* at 75.  Dr. Mann listed the "clinical findings and objective signs" of Einzig's disorders as including loss of upper and lower reflex, abnormal posture, cervical spasm, and lumbar spasticity. *Id.*

The Mann Statement relates to a time period before the date of the ALJ's April 2022 decision.  Further, the Mann Statement is material and carries a reasonable probability of changing the ALJ's decision.  The ALJ's conclusion that Einzig was not disabled before February 1, 2022,

7

was based on findings that he "did not appear to really seek treatment for pain" until November 11, 2021, and that he had "little or no treatment records showing impact of degenerative disc disease prior to" February 1, 2022. *Id.* at 27-28. The Mann Statement reflects that Einzig in fact did seek treatment for pain before November 2021, that he was treated monthly for one year, and that his back disorders were impactful. *Cf. Pupo*, 17 F.4th at 1063-64 ("These new medical records showing Pupo in fact had surgery for her stress incontinence constitute new and material evidence that had a reasonable probability of changing the outcome of the decision. This is particularly true when considered with the ALJ's findings . . . that Pupo had never been hospitalized for any of her physical impairments and that her doctors' physical treatment notes had been consistently unremarkable. Both of these findings now appear to be inaccurate with respect to her stress incontinence when these new records are considered." (quotation marks omitted)).

Further, the physical limitations as reflected in the Mann Statement differ in various respects from the ALJ's findings as to Einzig's physical limitations before February 1, 2022. For example, Dr. Mann stated that Einzig could sit for about four hours during an eight-hour workday and stand/walk for about four hours during an eight-hour workday, whereas the ALJ found that Einzig could sit for six hours during an eight-hour workday and stand/walk for no more than six hours during an eight-hour workday. DE 11 at 26, 76. Dr. Mann stated that Einzig could lift and carry less than ten pounds occasionally, ten pounds rarely, and twenty pounds or more never. On the other hand, the ALJ found that Einzig could lift, carry, push, and pull ten pounds frequently and no more than twenty pounds occasionally. *Id.* at 26, 77. Dr. Mann stated that Einzig rarely could stoop and never could crouch, whereas the ALJ found that Einzig occasionally could stoop and crouch. *Id.* at 26, 77.

Accuracy as to Einzig's lifting ability is particularly important. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up

to 10 pounds." 20 C.F.R. § 404.1567(b). The ALJ determined that Einzig had this lifting ability before February 1, 2022, he had the residual functional capacity to perform light work before that date, there were a significant number of jobs in the national economy that he could have performed given this residual functional capacity, and therefore he was not disabled before February 1. DE 11 at 26, 32-34. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). The Mann Statement was signed before February 1, 2022, and indicates that Einzig had this lifting ability. DE 11 at 77. The ALJ determined that, when Einzig had the residual functional capacity to perform sedentary work, there were not a significant number of jobs in the national economy that he could have performed, and therefore he was disabled. *Id.* at 33-34. Had the ALJ found that Einzig had the lifting ability indicated in the Mann Statement earlier than February 1, 2022, as Dr. Mann said, there is a reasonable probability that the ALJ would have determined that Einzig had the residual functional capacity to perform sedentary work and was disabled before that date. *Cf. Pupo*, 17 F.4th at 1064 ("Considering this new objective medical evidence bearing on the severity of her stress incontinence, a factfinder could reasonably conclude that Pupo could not have lifted up to fifty pounds at a time or frequently lifted and carried objects weighing up to twenty-five pounds during the relevant period. . . . Given the foregoing, the Appeals Council erred in concluding that this new evidence failed to show a reasonable probability of a different outcome.").

The Commissioner maintains that the Mann Statement would not affect the ALJ's decision because the Mann Statement contains only pre-printed questions with "yes" or "no" responses that lack support. DE 22 at 14. The Commissioner asserts, "As the Eleventh Circuit has held several times, similar questionnaires submitted to the Appeals Council were found to be immaterial

9

because they provide slight probative evidence." *Id.* The Commissioner cites two cases to support that proposition.

In the first case that the Commissioner cites, *Harrison v. Commissioner of Social Security*, the Eleventh Circuit concluded that the Appeals Council did not err by denying review even in light of new evidence in the form of a doctor's questionnaire and treatment notes. 569 F. App'x 874, 881 (11th Cir. 2014). The Eleventh Circuit reasoned that the doctor's "opinions in his questionnaire [were] conclusory and [did] not explain in any detail the reasons for his opinions," those opinions were "no different from earlier records that the ALJ found conclusory," the appellant did "not show how the extra treatment notes . . . change[d] the weight of the evidence in her favor," and the "additional records appear[ed] to be cumulative with previously treatment notes that were already considered by the ALJ." *Id.* Here, the Mann Statement does contain pre-printed boxes and numbers that Dr. Mann checked or circled. *See* DE 11 at 76-78. However, the Mann Statement also contains brief explanations of Einzig's symptoms, "clinical findings and objective signs," and treatment. *Id.* at 75. These explanations provide reasoning for the checked boxes and circled numbers. Further, the Eleventh Circuit's decision in *Harrison* that the Appeals Council had not erred was based in part on the cumulative nature of the purported new evidence. Here, neither party has pointed the Court to evidence the ALJ considered that would make the Mann Statement cumulative. *Harrison* is distinguishable.

In the second case that the Commissioner cites, *Burgin v. Commissioner of Social Security*, the Eleventh Circuit concluded that the Appeals Council did not err by denying review even in light of new evidence in the form of three providers' questionnaires, pharmacy information sheets, and pages from a Physicians Desk Reference. 420 F. App'x 901, 903 & n.4 (11th Cir. 2011). The Eleventh Circuit reasoned that the Appeals Council "was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a

survey, with no supporting explanations." *Id.* at 903. As already stated, the Mann Statement contains brief explanations supporting the checked boxes and circled numbers. *Burgin* is distinguishable. The Appeals Council erred by refusing to consider the Mann Statement because it is material, it relates to a period before the ALJ's decision, and there is a reasonable probability that it would change the ALJ's decision.

**B. Physical Medical Source Statement from Shahab Kidwai, MD**

Einzig submitted to the Appeals Council a Physical Medical Source Statement from Shahab Kidwai, MD dated April 5, 2022 (the "Kidwai Statement"). DE 19-1 at 8-11. According to the Kidwai Statement, Einzig saw Dr. Kidwai once on March 16, 2022. *Id.* at 8.

Although the Kidwai Statement itself may not have been before the ALJ, the ALJ did receive and review records relating to Einzig's March 16 appointment with Dr. Kidwai. *See* DE 11 at 770-71. The ALJ summarized those records in her written decision:

> Records from Dr. Shahab Kidwai show [Einzig] was seen on March 16, 2022, for complaints of numbness and pain in both feet, hip pain, and balance problems. His exam on that occasion showed trace deep tendon reflexes in the upper extremities and absent deep tendon reflexes in his lower extremities. Sensory examination showed reduced sensation to pinprick in a stocking distribution. Vibration showed reduced in lower extremities distally and positive Romberg. Tandem gait was unsteady. He had reduced lumbar range of motion that was painful on extremes of the movements. He had psoriatic patches all over his body, especially his abdomen, forearms, and knees. He had positive Patrick's signs in both hip joints. He was advised to use a cane for walking. He was also advised to avoid walking in darkness, getting up fast, or turning fast due to neuropathy affecting his balance.

*Id.* at 31.

Einzig emphasizes the physical limitations included in the Kidwai Statement, which were not reflected in the records that the ALJ reviewed. *See* DE 21 at 13; *see also* DE 11 at 770-71; DE 19-1 at 8-11. However, Dr. Kidwai made his opinions about Einzig's physical limitations based on an appointment that occurred after February 1, 2022, the date that the ALJ determined Einzig was disabled. The Kidwai Statement may support the ALJ's decision that Einzig was

disabled at the time of the appointment, but there is no reasonable probability that the Kidwai Statement would change the ALJ's decision that Einzig was not disabled before February 1.

### C. Physical Medical Source Statement from Esaie Aime, DPT

Einzig submitted to the Appeals Council a Physical Medical Source Statement from Esaie Aime, DPT dated April 27, 2022 (the "Aime Statement"). DE 19-1 at 3-6. According to the Aime Statement, Einzig had been seeing Dr. Aime twice per week for about four months. *Id.* at 3.

Although the Aime Statement indicates that Einzig began to see Dr. Aime around late December 2021, before the date that the ALJ determined Einzig was disabled, the ALJ acknowledged that records demonstrated Einzig had begun seeking treatment for pain by November 2021. *See* DE 11 at 28. Dr. Aime expressed the opinions in the Aime Statement after the date of disability and based at least in part on appointments occurring after the date of disability. While the Aime Statement does express physical limitations, Dr. Aime does not provide a date on which she found Einzig had those limitations. Given the lack of specificity as to the date Dr. Aime made the findings in the Aime Statement, there is no reasonable probability that it would change the ALJ's decision that Einzig was not disabled before February 1, 2022.

## V. CONCLUSION

Thus, the Court concludes that the Appeals Council erred by refusing to consider the Mann Statement but not by refusing to consider the Kidwai Statement and the Aime Statement. The Court therefore recommends that Einzig's Motion for Summary Judgment [DE 21] be **GRANTED** and that this matter be **REMANDED** for consideration of Einzig's disability status on a record that includes the Mann Statement. *See Pupo*, 17 F.4th at 1064 ("Because the Appeals Council failed to properly consider this new evidence submitted by Pupo, we remand for consideration of

Pupo's disability eligibility based on the total record."). The Court recommends that the Commissioner's Motion for Summary Judgment [DE 22] be **DENIED**.[1]

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 5th day of October, 2023.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE

---

[1] Given the Court's conclusion that a remand is appropriate and that Einzig's disability status before February 1, 2022, should be reviewed on a more complete record, the Court does not reach his challenge to the merits of the ALJ's decision that he was not disabled before February 1. *See, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1779-80 (2019) (explaining that "[f]undamental principles of administrative law . . . teach that a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question" and remanding for the Appeals Council to consider the merits when it had erroneously dismissed a request for review on a procedural ground). Should the District Court disagree that the Appeals Council should review Einzig's disability status on a more complete record in the first instance, the undersigned remains available to analyze the ALJ's decision that Einzig was not disabled before February 1.